## WILKINS v. JACKSON.

No. 12908—Opinion Filed June 3, 1924.

Rehearing Denied July 29, 1924.

**1. Sales—Price Omitted in Contract—Reasonable Price.**

Where, in a contract of sale of personal property, the price is left blank, the law will fix the price at the reasonable or market value at the time of delivery.

**2. Sales—Time and Place of Delivery—Gathered Corn.**

Where by contract the seller was to gather the corn and the buyer was to receive it at the place where gathered, and the seller gathered the corn and the buyer received it. delivery was made at the time the corn was gathered.

(Syllabus by Ray, C.)

Commissioners' Opinion, Division No. 1.

Error from Superior Court, Pottawatomie County; Leander G. Pitman, Judge.

Action by C. P. Jackson against Mrs. N.

C. Wilkins. Judgment for plaintiff, and defendant appeals. Reversed, with directions to grant defendant a new trial.

G. C. Abernathy and Edward Howell, for plaintiff in error.

Wyatt & Waldrep, for defendant in error.

Opinion by RAY, C. Plaintiff in error, defendant below, appeals from an adverse judgment of $1,000, which she claims to be excessive. Plaintiff recovered on two causes of action, but error is assigned only as to the first.

C. P. Jackson, assignee of J. J. Ertle and A. A. Ertle, commenced the action to recover the value of 836 bushels of corn alleged to have been delivered by the Ertles to the defendant under a written contract for which the defendant agreed to pay the reasonable value, alleged to be $1.60 per bushel, or of the total value of $1,337.60. The parties never at any time agreed upon the price to be paid.

The written contract under which the corn was alleged to have been delivered was made a part of the petition, and is as follows:

"McLoud, Oklahoma,
"Oct. 12, 1916

"This contract entered into this 12 day of Oct. 1916 by and between A. A. & J. J. Ertle, parties of the first part and N. C. Wilkins, party of the second part to-wit:

"That in the consideration of N. C. Wilkins, party of the second part signing the bond of A. A. & J. J. Ertle for the sum of $1,700 dollars, the said A. A. & J. J. Ertle are to gather from their Indian Lease one mile north and two miles east of McLoud, Okla., known as the Jess Barnett lease corn to the amount of 2,000 bushels and store same in barn of said N. C. Wilkins on her farm, same being southeast quarter of section 21, in township 12 north of range 2 east, in Lincoln county, Okla., said corn to be gathered as fast as possible within the next 30 days and said A. A. & J. J. Ertle are to sell said corn to said N. C. Wilkins at ———— per bushel and said N. C. Wilkins is to pay said A. A. & J. J. Ertle for said corn when the law suit now pending between A. A. & J. J. Ertle and the First National Bank of McLoud, Oklahoma is settled. If suit is gained by A. A. & J. J. Ertle and said N. C. Wilkins is to pay said A. A. & J. J. Ertle for corn less amount they might owe her, and if suit is gained by First National Bank said N. C. Wilkins is to pay for said corn as ordered by the court. Said N. C. Wilkins is to haul said corn from lease of said A. A. & J. J. Ertle to her residence stated above."

The corn was received by the defendant and by her hauled to her place between the time the contract was entered into, October 12, 1916, and some time in January, 1917. Plaintiff was permitted, over the objection of the defendant, to prove the market value of the corn as of August, 1917, which showed the market value at that time to have been from $2.10 to $2.25 per bushel. Plaintiff offered no proof as to value at the time the contract was made or at the time of delivery. The defendant's evidence showed that at the time the contract was entered into, and at the time the corn was received by defendant, the market value was from $.65 to $.75 per bushel. The testimony was conflicting as to the number of bushels delivered.

The court gave this instruction, which was excepted to by the defendant:

"If you find for the plaintiff you must assess his recovery in such sum as you may find from the evidence is due the plaintiff for the corn delivered under the contract referred to in this case at the price you believe from a preponderance of the evidence the defendant was to pay for the corn, such sum to be credited with the amounts due the defendant as stated in these instructions."

This instruction, not being modified or explained by any other instruction, placed the responsibility upon the jury of determining when the defendant became the owner of the corn, although it required an interpretation of the written contract. It was for the court, and not the jury, to interpret the written contract. Whether or not, and when, property passes is dependent upon the intention of the parties to the contract, and that intention must be gathered from the language of the instrument where it is clear and unambiguous.

It is clear that the jury fixed the value of the corn on the evidence offered by the plaintiff as of August, 1917. It is conceded by the plaintiff in his brief that in arriving at the verdict the jury must have fixed the price of the corn at $1.60 per bushel. If the evidence as to the market price of the corn in August, 1917, was improperly admitted, it was certainly prejudicial to the rights of the defendant.

In State National Bank v. Roseberry, 46 Okla. 708, 148 Pac. 1034, this court quoted with approval from the Elgee Cotton Cases, 22 Wall. (U. S.) 184, 22 L. Ed. 863, as follows:

"It must be admitted there is often great difficulty in determining whether a contract is itself a sale of personal property, so as to pass the ownership to the vendee or whether it is a sale on condition, to take

effect or be consummated only when the condition shall be performed, or whether it is a mere agreement to sell. It is doubtless true whether the property passes or not is dependent upon the intention of the parties to the contract, and that intention must be gathered from the language of the instrument. There are, however, certain rules for the construction of such contracts, which are well settled in England, and, we think, also in this country. Mr. Justice Blackburn, in his work on Sales, states two of them, and Mr. Benjamin, in his treatise, adds a third. They are as follows:

"First. 'When, by the agreement, the vendor is to do anything to the goods for the purpose of putting them into that state in which the purchaser is bound to accept them, or, as it is sometimes worded, into a deliverable state, the performance of those things shall, in the absence of circumstances indicating a contrary intention, be taken to be a condition precedent to the vesting of the property.'

"Second. 'Where anything remains to be done to the goods for the purpose of ascertaining the price, as by weighing, measuring, or testing the goods, where the price is to depend on the quantity or quality of the goods, the performance of these things shall also be a condition precedent to the transfer of the property, although the individual goods be ascertained and they are in the state in which they ought to be accepted.'

"Third. 'Where the buyer is by contract bound to do anything as a consideration, either precedent or concurrent, on which the passing of the property depends, the property will not pass until the condition be fulfilled, even though the goods may have been actually delivered into the possession of the buyer.'

"These may be regarded as rules for ascertaining the intention of the parties. They are in most cases held to be conclusive tests."

We think the intention of the parties is clearly ascertainable from the language of the contract. The moving cause was the signing of the seller's bond by the buyer. The corn was to be gathered by the sellers and received by the buyer at the place where it was gathered and by the buyer hauled to her place. The written contract was complete in every particular except as to the price to be paid which was left blank. We think, following the above quoted rules, it was a sale contract with one condition, either precedent or concurrent, and one condition precedent. As to the first condition, the signing of the bond by the buyer, no question is raised. It appears to have been treated throughout the trial as a fulfilled concurrent condition. The second, a condition precedent, the gathering of the corn by the seller, which was to have been fulfilled within 30 days from the execution of the contract, was likewise treated as fulfilled but the time of fulfillment not definitely fixed. It is evident, however, that this condition was fulfilled prior to or at the time the corn was actually received by the buyer. The evidence all shows that the corn was actually received by the buyer between the time the contract was entered into, October 12, 1916, and some time in January, 1917. Under this interpretation of the contract delivery was made by the seller to the buyer at the time the corn was gathered.

The parties are agreed that the price to be paid is to be determined by the reasonable or market value, the plaintiff contending that the action is one for conversion and that he is entitled to recover the highest market price between the time the contract was executed and the commencement of the action, while the defendant contends that plaintiff was entitled to recover the reasonable or market value at the time of delivery. The plaintiff's contention, that it is an action for conversion, is answered by the allegations of his petition that the corn was delivered under the written contract and that the defendant promised to pay the reasonable value. The general rule is that where a commodity is sold and no price fixed, the law fixes a price at the reasonable or market value at the time of delivery. Burr v. Williams, 23 Ark. 244; McEwen v. Morey, 60 Ill. 32; Hill v. Hill, 1 N. J. 261, 1 Am. Dec. 206; S. F. Bowser & Co. v. Marks (Ark.) 131 S. W. 334; 23 R. C. L. 1278; 35 Cyc. 101.

We think the court erred in permitting the plaintiff to prove the market value of the corn at a time long subsequent to the delivery and in submitting to the jury the interpretation of the written contract.

The judgment should be reversed, with directions to grant the defendant a new trial.

By the Court: It is so ordered.